# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAWN MICHACCIO, | Case No.: 1:17-cv-00687 - LJO - JLT |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS GRANTING IN PART PLAINTIFF'S MOTION |
| v. | FOR DEFAULT JUDGMENT |
| HATFIELD PORTFOLIO GROUP, LLC, | (Doc. 17) |
| Defendant. | |

Dawn Michaccio asserts Hatfield Portfolio Group, LLC engaged in unlawful and abusive actions to collect a debt she owed. She seeks to impose liability for violations of the Telephone Consumer Protection Act, the Fair Debt Collection Practices Act, and California's Rosenthal Fair Debt Collection Practices Act. (Doc. 1) Plaintiff now seeks the entry of default judgment against Defendant, as well as an award of fees and costs related to this action. (Doc. 17) For the following reasons, the Court recommends Plaintiff's motion for default judgment be **GRANTED** in the modified amount of $3,816.25.

## I.      Background and Factual Allegations[1]

Plaintiff asserts that "[s]ometime prior to January 2016, [she] allegedly incurred debt to Fingerhut." (Doc. 1 at 7, ¶ 32) Plaintiff contends that Fingerhut hired Accelerating Servicing Group

---

[1] The Court accepts Plainitff's factual assertions because the Clerk has entered default against the defendant. *See Pope v. United States,* 323 U.S. 1, 22 (1944)

1

and Hatfield "to collect on the alleged debt owed by Plaintiff." (*Id.*, ¶ 33) According to Plaintiff, "[s]ometime [in] or about March 2016, Defendant Hatfield began calling Plaintiff on behalf of Defendant Fingerhut to collect an alleged debt from Plaintiff." (*Id.*, ¶ 35) She reports that Hatfield placed calls to "her cellular telephone ending in 9872 via an 'automatic telephone dialing system' ('ADTS'), as defined by 47 U.S.C. § 227(a)(1), using 'an artificial or prerecorded voice' as prohibited by 47 U.S.C. § 227(b)(1)(A)." (*Id.*, ¶ 36)

According to Plaintiff:

> On July 14, 2016 at 3:25 pm, July 19, 2016 at 12:31 pm, July 22, 2016 at 10:27 am, August 1, 2016 at 12:16 pm, August 3, 2016 at 12:47 pm, August 5, 2016 at 11:00 am, August 9, 2016 at 11:16 am, August 11, 2016 at 12:10 pm, August 15, 2016 at 11:04 am, August 18, 2016 at 11:24 am, August 19, 2016 at 9:43 am, August 23, 2016, at 9:27 am, August 25, 2016 at 11:03 am, August 29, 2016 at 10:27 am, August 30, 2016 at 12:45 am, and December 30, 2016, at 3:05 pm, Defendants ASG and Hatfield, on behalf of Fingerhut, called from two different numbers 716-382-7422 and 866-831-8195 and left the following pre-recorded voicemails to Plaintiff's cellular phone:
>
>> My name is Susan Hayward from Hatfield Portfolio Group. Please return the call at 855-373-1875 and refer to file number 604327. For immediate assistance please dial zero and you'll be transferred to the next available representative. Thank you.

(Doc. 1 at 8, ¶ 39) In addition, Plaintiff contends Accelerated Servicing Group called from phone number 855-373-1872 and left a voice message on her cell phone number stating:

> Hello Dawn, this is Mr. Webster with the Accelerated Servicing Group. Dawn, we are waiting for about 6 months to hear back from either yourself or your lawyer regarding Fingerhut. Claim number is 604327. The phone number I can be reached at is 716-382-7422. Thank you and have a great day.

(*Id.*, ¶ 40)

Plaintiff alleges she "did not provide prior express consent to Defendants to receive calls on [her] cellular telephone." (Doc. 1 at 9, ¶ 41) In addition, Plaintiff asserts that "in March 2016, [she] specifically revoked any consent which may have been mistakenly believed, when she orally requested Defendants to stop calling." (*Id.*, ¶ 42) She asserts that "she was frustrated and distressed that despite her telling Defendants to stop calling her on her cell phone, Defendants continued to harass Plaintiff with calls using an ATDS." (*Id.*, ¶ 44)

Further, Plaintiff alleges that "Hatfield used a false, deceptive, or misleading representation or means in connection with the collection of a debt." (Doc. 1 at 10, ¶ 56) According to Plaintiff,

2

"During one of the phone calls on or about June 5, 2016, … Hatfield's representative, in order to frighten, coerce, and abuse Plaintiff, threatened Plaintiff with a false criminal accusations, specifically to put Plaintiff in jail if she did not pay $100 per month on the debt." (*Id.*, ¶ 55)

On May 18, 2017, Plaintiff initiated this action by filing a complaint against Hatfield, ASG, and Fingerhut. (Doc. 1) Based upon the foregoing facts, Plaintiff the defendants were liable for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227; the Fair Debt Collection Practices Act, 15 U.S.C. §1692, *et seq.*; California's Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code §§ 1788-1788.32; and negligence. (*See id.* at 11-14). Plaintiff voluntarily dismissed her claims against Fingerhut and ASG, and only Hatfield remains as a defendant. (*See* Docs. 5-6, 14, 15)

Hatfield was served with the summons and complaint on May 30, 2017 (Doc. 8 at 1) but failed to respond within the required by the Federal Rules of Civil Procedure. At Plaintiff's request, the Clerk entered default against Hatfield on August 11, 2017. (Docs. 9, 12) Plaintiff now seeks the entry of default judgment against the defendant. (Doc. 17) She seeks statutory damages in the amount of $27,500.00; attorney fees in the amount of $2,183.00; and costs in the amount of $706.25 for a total award of $30,389.25. (*See id.* at 10)

## II.     Legal Standards Governing Entry of Default Judgment

After default is entered because "a party against whom a judgment for relief is sought has failed to plead or otherwise defend," the party seeking relief may apply to the court for a default judgment. Fed. R. Civ. P. 55(a)-(b). Upon the entry of default, well-pleaded factual allegations regarding liability are taken as true, but allegations regarding the amount of damages must be proven. *Pope v. United States*, 323 U.S. 1, 22 (1944); *see also Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977). In addition, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of North Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992) (citing *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978)).

## III.     Discussion and Analysis

The Court has the discretion to enter default judgment. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). The entry of default "does not automatically entitle the plaintiff to a court-ordered judgment. *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F.Supp.2d 1172, 1174 (C.D. Cal 2002), *accord Draper*

*v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986). The Ninth Circuit determined:

> Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

### A. Prejudice to Plaintiff

The first factor considers whether the plaintiff would suffer prejudice if default judgment is not entered, and the potential prejudice to the plaintiff weighs in favor of granting a default judgment. *See Pepsico, Inc.*, 238 F. Supp. 2d at 1177. Generally, where default has been entered against a defendant, a plaintiff has no other means by which to recover damages. *Id.*; *see also Microsoft Corp. v. Nop*, 549 F. Supp. 2d 1233, 1236-37 (E.D. Cal. 2008) ("Plaintiff will be prejudiced if default judgment is denied because plaintiff will be without other recourse for recovery"). Because Plaintiff has no other means to recover damages from Hatfield, she would be prejudiced if default judgment is not granted, and this factor weighs in favor of granting the motion.

### B. Merits of Plaintiff's claims and the sufficiency of the complaint

Given the kinship of these factors, the Court considers the merits of Plaintiff's substantive claims and the sufficiency of the complaint together. *See Premier Pool Mgmt. Corp. v. Lusk*, 2012 U.S. Dist. LEXIS 63350, at *13 (E.D. Cal. May 4, 2012). The Ninth Circuit has indicated that, when combined, the factors require a plaintiff to "state a claim on which the plaintiff may recover." *Pepsico, Inc.*, 238 F. Supp. 2d at 1175.

#### 1. Violation of the Telephone Consumer Protection Act

"The TCPA prohibits two types of phone calls: 1) unsolicited phone calls made using automatic dialers, 47 U.S.C. § 227(b), and 2) phone calls made in violation of do-not-call registries, *id*. § 227(c)." *Drew v. Lexington Consumer Advocacy, LLC.*, 2016 WL 1559717 at *4 (N.D. Cal. Apr. 18, 2018), citing *Cunningham v. Addiction Intervention*, 2015 WL 1101539, at *1 (M.D. Tenn. March 11, 2015). Specifically, the TCPA prohibits placing "any call ... using any automatic telephone dialing system ... to any telephone number assigned to a ... cellular telephone service[.]" 47 U.S.C. § 227(b)(1)(A)(iii).

Thus, to state a claim for a violation of this provision of the TCPA, a plaintiff must establish: "(1) the defendant called a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent." *Meyer v. Portfolio Recovery Assocs.*, *LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012) (citing 47 U.S.C. § 227(b)(1)). Here, Plaintiff alleges that the defendant called her cell phone number without her prior consent. However, the allegations are insufficient to support a conclusion that the calls were placed using an automatic telephone dialing system.

The TCPA defines an "automatic telephone dialing system" as "equipment which has the capacity — (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). To determine whether an ATDS was used, courts have considered whether messages were sent in an impersonal manner or personalized to the plaintiff. *See, e.g.*, *Drew,* 2016 WL 1559717 at *4; *Kramer v. Autobytel*, 759 F.Supp. 2d 1165, 1171 (N.D. Cal. 2010); *Charkchyan v. EZ Capital, Inc.*, 2015 WL 3660315 at *3 (C.D. Cal. June 11, 2015). Where the messages received by the plaintiff were "impersonally scripted" or "in an impersonal manner," the facts alleged were "enough to establish the defendant used an ATDS." *Compare,* 2016 WL 1559717 at *5, *Kramer*, 759 F.Supp. 2d at 1171, *with Daniels v. ComUnity Lending, Inc.,* 2014 WL 51275 at *5 (S.D. Cal. Jan. 6, 2014).

For example, in *Drew*, the court considered allegations that the defendant used an ATDS in sending text messages to the plaintiff, and found the facts alleged were sufficient to support a claim where the messages were impersonal. *Id.*, 2016 WL 1559717 at *5. The plaintiff alleged that the defendant contacted him using an ATDS, but the court explained such an allegation was "insufficient standing alone." *Id.* Instead, the court considered the content of the messages received, noting: "the messages are impersonal advertisements[;] they do not address Mr. Drew personally and they advertise payday-loan services." *Id.*

In contrast, here, Plaintiff alleges she received several phone calls from two different phone numbers used by Hatfield and ASG. (Doc. 1 at 8, ¶ 39) However, she identifies only one message left by Hatfield, which stated: "My name is Susan Hayward from Hatfield Portfolio Group. Please return the call at 855-373-1875 *and refer to file number 604327*…" (*Id.*, emphasis added) Likewise, when Plaintiff received phone calls from ASG, she was addressed by name, and the speaker referred to

Fingerhut and "[c]laim number… 604327." (*Id.*, ¶ 41) Because the messages Plaintiff received were personalized and addressed the file/claim number assigned to her regarding the alleged debt owed to Fingerhut, the Court finds the allegations are insufficient to support a conclusion that Hatfield used an ATDS in violation of the TCPA.

### 2. Violation of the Fair Debt Collection Practices Act

Under the provisions of the FDCPA, debt collectors are prohibited "from making false or misleading representations and from engaging in various abusive and unfair practices." *Heintz v. Jenkins*, 514 U.S. 291, 292 (1995); *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1030 (9th Cir. 2010). To establish a violation of the FDCPA, Plaintiff must show: (1) she was a consumer (2) who was the object of a collection activity arising from a consumer debt, and (3) the defendant is a "debt collector" as defined by the FDCPA, (4) who engaged in an act or omission prohibited by the FDCPA. *Miranda v. Law Office of D. Scott Carruthers*, 2011 WL 2037556 at *4 (E.D. Cal. May 23, 2011) (citing *Turner v. Cook*, 362 F.3d 1219, 1227-28 (9th Cir. 2004)). Plaintiff was a consumer and asserts Hatfield, a debt collector, was attempting "to collect on [an] alleged debt owed by Plaintiff" to Fingerhut. (Doc. 1 at 7, ¶¶ 30, 32-33) Thus, the Court must determine whether the allegations are sufficient to support a conclusion that Hatfield engaged in acts prohibited by the FDCPA.

The FDCPA prohibits use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt" by a debt collector." 15 U.S.C. § 1692e. For example, debt collectors are prohibited from making a "representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action." *Id.*, § 1692e(4). On June 5, 2016, a "Hatfield's representative . . . threatened Plaintiff with a false criminal accusation[], specifically to put Plaintiff in jail if she did not pay $100 per month on the debt." (Doc. 1 at 10, ¶ 55)

In addition, Plaintiff reports she received a voicemail from Hatfield stating: "My name is Susan Hayward from Hatfield Portfolio Group. Please return the call at 855-373-1875 and refer to file number 604327…" (Doc. 1 at 8, ¶ 39) However, Hatfield did not identify itself as a debt collector in the voice message left for Plaintiff, which is required under Section 1692e(11). *See e.g., Costa v. Nat'l*

*Action Fin. Servs.,* 634 F. Supp. 2d 1069, 1076 (E.D. Cal. 2007) (finding the defendant violated Section 1692e(11) where the defendant left "messages on [the] plaintiff's voice mail," but "did not disclose the caller's identity . . . or the nature of the call"); *Applewhite v. Anaya Law Grp.,* 2015 WL 11438097, at *5-6 (C.D. Cal. June 15, 2015) (finding the defendant violated Section 1692e(11) where it "failed to notify [the plaintiff] that it was a debt collector" in communications with the plaintiff).

Because Plaintiff has identified conduct taken by Hatfield that is prohibited by Section 1692e, she has established violations of the FDCPA.

### 3. Violation of the California's Rosenthal Fair Debt Collection Practices Act

California's Rosenthal Act, "like its federal counterpart, is designed to protect consumers from unfair and abusive debt collection practices." *Robinson v. Managed Accounts Receivable Corp.*, 654 F.Supp.2d 1051, 1060 (C.D. Cal. 2009) (citing Cal. Civ. Code § 1788.1). The provisions of FDCPA are incorporated into the Rosenthal Act under Cal. Civ. Code § 1788.17. Consequently, conduct by a debt collector that violates the FDCPA violates the Rosenthal Act as well. *See, e.g., id.; Hosseinzadeh v. M.R.S. Assoc.*, 387 F. Supp. 2d 1104, 1118 (C.D. Cal. 2005); *Abels v. JBC Legal Group, P.C.*, 227 F.R.D. 541, 548 (N.D. Cal. 2005). Thus, because Plaintiff establishes a claim under the FDCPA, she has also established a claim of the Rosenthal Act.

**C. Sum of money at stake**

In considering this factor, the Court "must consider the amount of money at stake in relation to the seriousness of [a] [d]efendant's conduct." *Pepsico, Inc.*, 238 F.Supp.2d at 1176. Thus, the Court must "assess whether the recovery sought is proportional to the harm caused by [a] defendant's conduct." *Landstar Ranger, Inc. v. Parth Enters., Inc.*, 725 F. Supp. 2d 916, 921 (N.D. Cal. 2010). "Default judgment is disfavored when a large sum of money is involved." *See Moore v. Cisneros*, 2012 U.S. Dist. LEXIS 177044, at *5 (E.D. Cal. Dec. 12, 2013).

Plaintiff seeks statutory damages in the amount of $2,000 for violations of the FDCPA and Rosenthal Act, attorney fees, and costs. (*See* Doc. 1 at 10) Although this amount represents the statutory maximums, the statutes contemplate such an award, and the amount sought is proportional to the harm caused by the defendant's violations. See, e.g., Jiang v. New Millennium Concepts Inc., 2016 WL 3682474, at *3 (N.D. Cal. 2016) (finding that this factor weighed in favor of default judgment

where the plaintiff sought "the maximum $2,000 in statutory damages for violation of the FDCPA and [the Rosenthal Act]," as well as attorney fees and costs). Therefore, therefore, this factor does not weigh against entry of default judgment.

### D. Possibility of dispute concerning material facts

"The fifth *Eitel* factor examines the likelihood of dispute between the parties regarding the material facts surrounding the case." *United States v. Sterling Centrecorp, Inc.*, 2011 WL 2198346 at *6 (E.D. Cal. June 6, 2011) (quoting *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1060 (N.D. Cal. 2010). There is little possibility of dispute concerning material facts because (1) based on the entry of default, the Court accepts allegations in Plaintiff's Complaint as true and (2) though properly served, the defendant failed to appear. *See Pepsico, Inc.*, 238 F.Supp.2d at 1177; *see also Elektra Entm't Group, Inc. v. Crawford*, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists"). Therefore, this factor does not weigh against default judgment.

### E. Whether default was due to excusable neglect

Generally, the Court will consider whether a defendant's failure to answer is due to excusable neglect. *See Eitel*, 782 F.2d at 1472. Defendant was served with the Summons and Complaint in May 2017. (*See* Doc. 8) Thus it is unlikely the failure to respond was the result of excusable neglect. *Shanghai Automation Instrument Co., Ltd. v. Kuei*, 194 F.Supp.2d 995, 1005 (N.D. Cal. 2001) (finding no excusable neglect because the defendants "were properly served with the Complaint, the notice of entry of default" and received the moving papers in support of the motion for default judgment).

### F. Policy disfavoring default judgment

Default judgments are disfavored because "[c]ases should be decided on their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. Here, however, the policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits does not weigh against default judgment because Defendant's failure to appear before the Court makes a decision on the merits impractical.

### G. Conclusion

Based upon the foregoing, the Court finds the *Eitel* factors weigh in favor of granting default

judgment, and recommends the motion for default judgment be **GRANTED**.

## IV.  Relief Requested

### A.  Statutory Damages[2]

Plaintiff seeks statutory damages for the defendant's unlawful actions under the FDCPA and Rosenthal Act. (Doc. 17 at 5-6) Pursuant to the FDCPA, "any debt collector who fails to comply with any [FDCPA] provision . . . with respect to any person is liable to such person in an amount equal to the sum of … any actual damage sustained by such person as a result of such failure [and] in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000 …." 15 U.S.C. § 1692k(a)(1), (2)(A). The Ninth Circuit determined courts *must* award FDCPA statutory damages on proof of violation, explaining the "statutory language makes an award of fees mandatory." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008) (citation omitted).

Likewise, the Rosenthal Act provides for statutory damages for violations of the act, providing in relevant part:

> Any debt collector who willfully and knowingly violates this title with respect to any debtor shall, in addition to actual damages sustained by the debtor as a result of the violation, also be liable to the debtor only in an individual action, and his additional liability therein to that debtor shall be for a penalty in such amount as the court may allow, which shall not be less than one hundred dollars ($100) nor greater than one thousand dollars ($1,000).

Cal. Civ. Code § 1788.30(b). No proof of actual damages is necessary for a plaintiff to recover statutory damages under the Rosenthal Act. *See, e.g.*, *Heritage Pac. Fin., LLC v. Monroy*, 215 Cal. App. 4th 972, 1006 (2013).

To determine the amount of statutory damages under the FDCPA, the court must consider "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional." 15 U.S.C. § 1692k(b). For example, where a plaintiff alleges a single violation of the FDCPA, courts have determined an award of $250 is appropriate under the FDCPA, with a matching amount awarded under the Rosenthal Act. *See Lyon v. Bergstrom Law, Ltd.*, 2017 WL 2350447 at *10 (E.D. Cal. May 31, 2017), citing *e.g.*, *Hetland v. Simm*

---

[2] Because the Court finds Plaintiff fails to state a claim for a violation of the TCPA, the Court addresses only the damages requested for violations of the FDCPA and Rosenthal Act.

9

*Assocs., Inc.,* 2013 WL 4510594 at *2 (N.D. Cal. Aug. 22, 2013) (awarding $250 in statutory damages where the plaintiff "only alleged that [the defendant] left her a single voicemail"); *Mejia v. Marauder Corp.*, 2007 WL 806486 at *11 (N.D. Cal. Mar. 15, 2007) (concluding the "plaintiff [was] entitled to $250 in statutory damages" where there was "only a single collection letter at issue").

Plaintiff seeks an award of $1,000.000 under both the FDCPA and Rosenthal Act. (Doc. 17 at 5-6) According to Plaintiff, she "has adequately set forth facts in her complaint, and subsequent declarations, that such conduct by Defendant was willful and in complete disregard for the rights of Plaintiff."[3] (*Id.* at 6) Significantly, the factual allegations establish several violations, including causing "causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person;" failure to identify Hatfield as a debt collector in the voicemail message left for Plaintiff; and threatening her with incarceration for failure to pay the debt owed to Fingerhut. (*See* Doc. 1, ¶¶ 39, 52-59) In light of the number of violations and unlawful debt collection practices, which appear to have been willful and knowingly made by Hatfield, the Court finds an award of the statutory maximum is appropriate. Accordingly, the Court recommends Plaintiff's request for the statutory maximum of $1,000.00 under the FDCPA and $1,000.00 under the Rosenthal Act be **GRANTED.**

### B. Request for Fees and Costs

Plaintiff also seeks an award of attorney's fees and costs in the amount of $2,889.25 (Doc. 8 at 15), which may be awarded under the FDCPA and California law. *See* 15 U.S.C. § 1692k(a)(3); Cal. Civ. Code § 1788.30(c). Accordingly, the Court must determine whether the fees and costs sought by Plaintiff are reasonable.

In general, the Court determines a reasonable fee award "by multiplying the number of hours reasonably expended by counsel on the particular matter times a reasonable hourly rate." *Florida v. Dunne*, 915 F.2d 542, 545 n. 3 (9th Cir. 1990) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). The product of this computation, the "lodestar" amount, yields a presumptively reasonable fee. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013); *Camacho v. Bridgeport Fin., Inc.*,

---

[3] It is not clear what declarations Plaintiff refers to in support of her request for the maximum statutory damages. The only declaration filed in this action is the declaration of counsel, which does not provide any information regarding the actions taken by Hatfield.

10

523 F.3d 973, 978 (9th Cir. 2008).

### 1. Time expended

A fee applicant "bears the burden of … documenting the appropriate hours expended." *Hensley v. Eckerhart*, 461 U.S. 424, 424 (1983); *Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 945-46 (9th Cir. 2007). Plaintiff's counsel, Veronica McKnight, reports she spent a total of 7.4 hours of time on tasks related to this action, including drafting the complaint, talking with her client, and preparing the motion for default judgment. (*See* Doc. 17-2 at 1-3) Notably, the time reported by Ms. McKnight does include any clerical work or interoffice communications. (*See id.*) The Court finds the time expended on the tasks related to this action was reasonable.

### 2. Hourly rate

Attorney fees are to be calculated with "the prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 and n.11 (1984). The "relevant community" for purposes of determining the prevailing market rate is the "forum in which the district court sits." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). Thus, when a case is filed in this Court, "[t]he Eastern District of California, Fresno Division, is the appropriate forum to establish the lodestar hourly rate …." *See Jadwin v. County of Kern*, 767 F.Supp.2d 1069, 1129 (E.D. Cal. 2011). Ms. McKnight seeks an hourly rate of $295 for her work on this action (Doc. 17 at 9), which is not in accord with the market rate for the Fresno Division for lawyers of her skill and experience.[4]

As the Ninth Circuit observed, "determining an appropriate 'market rate' for the services of a lawyer is inherently difficult …." *Camacho*, 523 F.3d at 979 (quoting *Blum*, 465 U.S. at 895 n. 11). A reasonable rate accounts for the lawyer's "experience, skill, and reputation," and the rates awarded in the legal community in which the Court sits. *Id.*; *Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 906 (9th Cir. 1995). In evaluating hourly rates, the Court may consider "[a]ffidavits of the plaintiffs' attorneys and other attorneys regarding fees in the community" and hourly rates paid in other cases. *See United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). The

---

[4] The Court may apply "rates from outside the forum… 'if local counsel was unavailable, either because they are unwilling or unable to perform because they lack the degree of experience, expertise, or specialization required to handle properly the case.'" *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997) (quoting *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992)). Here, Plaintiff does not argue local counsel was unwilling or unable to prosecute her claims for violations of the FDCPA or Rosenthal Act. Therefore, the hourly rate must be aligned with this legal community.

11

Court may apply "either current or historically prevailing rates," though "the use of current rates may be necessary to adjust for inflation if the fee amount would otherwise be unreasonable." *Schwarz*, 73 F.3d at 908.

Previously, this Court observed: "Courts within the Eastern District of California's Fresno division have found that a reasonable range of attorney's fees for experienced lawyers is between $250 and $380, with the highest rates generally reserved for those attorneys who are regarded as competent and reputable and who possess in excess of 20 years of experience." *Barkett v. Sentosa Props. LLC*, 2015 WL 5797828 (E.D. Cal. Sept. 30, 2015) (internal quotation marks, citation omitted); *see also Jadwin v. County of Kern*, 767 F.Supp.2d 1069, 1134 (E.D. Cal. 2011) (awarding hourly rates of $350.00 for attorney with 14 years of experience, $275.00 for attorney with 11 years of experience, and $295.00 for a contract attorney with 18 years of experience in employment action). Accordingly, the Court must consider the "experience, skill, and reputation" of Ms. McKnight to determine an hourly rate that aligns with these rates within the Fresno Division. *See Camacho*, 523 F.3d at 979

Ms. McKnight was admitted to the state Bar in December 2015.[5] As of December 2017, she reported working for the law firm of Hyde & Swigart for sixteen months, where she practices consumer rights litigation. (Doc. 17-1 at 3, McKnight Decl. ¶¶ 16-17) According to Ms. McKnight, she has "filed and litigated several cases pursuant to the Fair Debt Collection Practices Act, the Telephone Consumer Protection Act, as well as numerous other cases pursuant to other consumer protection statutes in both federal and state court." (*Id.*, ¶ 18) She has not identified any information concerning her reputation as a lawyer for the Court's consideration.

Previously, this Court awarded an hourly rate of $125 to counsel who had been admitted to practice for less than two years when she worked on a wage and hour class action. *See In re Taco Bell Wage & Hour Actions*, 222 F. Supp.3d 813, 845 (E.D. Cal. 2016); *see also id.*, 222 F. Supp. 3d at 940 ("Courts in this division find that the prevailing rate for an attorney with less than two years of experience would range from $125.00 to $200.00 per hour") (collecting cases). Similarly, the Court

---

[5] Plaintiff's counsel did not provide information regarding her admission date. However the Court "may take judicial notice of the State Bar of California's website regarding attorneys' dates of admission to the Bar." *Davis v. Hollins Law*, 25 F.Supp.3d 1292, 1298 n. 5 (2014). Accordingly, the Court takes judicial notice of the admission date for Veronica McKnight as represented on the website of the State Bar of California. *See id.;* Fed. R. Evid. 201(b).

12

determined the hourly rate of $150 was appropriate for an associate who had been practicing law for less than two years when she completed the work in an action.[6] *See Johnson v. Wayside Prop., Inc.*, 2014 WL 6634324 at *8 (E.D. Cal. Nov. 20, 2014).

In light of its prior survey of attorney fees in the Fresno Division—and considering the skill and the experience possessed by Ms. McKnight through the filing of the instant motion—the Court finds the hourly rate of $150 is appropriate. *See In re Taco Bell Wage & Hour Actions*, 222 F. Supp.3d at 845; *Johnson*, 2014 WL 6634324 at *8.

### 3. Lodestar calculation

With the hourly rate adjustment set forth above, the lodestar for the 7.4 hours Ms. McKnight expended in this action is $1,110.00. Based upon the prior survey of attorney fees awarded in the Fresno Division and the Court's own knowledge, this fee award is reasonable for the experience, skill, and reputation of Ms. McKnight. *See Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011) (concluding "the district court did not abuse its discretion either by relying, in part, on its own knowledge and experience" to determine the reasonableness of a fee request). Therefore, the Court recommends Plaintiff's request for attorney fees be **GRANTED** in the modified amount of $1,110.00.

### 4. Costs

Both the FDCPA and Rosenthal Act authorize the award of costs for an action. *See* 15 U.S.C. § 1692k(a)(3); Cal. Civ. Code § 1788.30(c). Ms. McKnight reports that her office "incurred a total of $706.25 in costs for this entire action," including the filing fee and service expenses. (Doc. 17-1 at 4, McKnight Decl. ¶ 24; Doc. 17-3 at 1) These litigation expenses may be awarded as costs to Plaintiff. *See Yeager v. AT&T Mobility, LLC*, 2012 U.S. Dist. LEXIS 179842 at *21 (E.D. Cal. Dec. 18, 2012) (finding service fees and fees to the Clerk of Court are recoverable expenses). Accordingly, the Court recommends that Plaintiff's request for $706.25 in costs be **GRANTED**.

## V. Findings and Recommendations

The *Eitel* factors weigh in favor of granting default judgment, and the entry of default judgment is within the discretion of the Court. *See Aldabe*, 616 F.2d at 1092.

---

[6] Although this determination was made by the Sacramento Division, it demonstrates the hourly rates requested here do not align with those in the Eastern District.

Based upon the foregoing, the Court **RECOMMENDS**:

1. Plaintiff's motion for default judgment be **GRANTED**;
2. Plaintiff be **AWARDED** statutory damages in the amount of $**2,000.00**; and
3. Plaintiff be **AWARDED** attorney's fees and costs in the modified amount of $**1,816.25**.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within fourteen days of the date of service of these Findings and Recommendations, any party may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991); *Wilkerson v. Wheeler*, 772 F.3d 834, 834 (9th Cir. 2014).

IT IS SO ORDERED.

Dated: __**April 24, 2018**__             __**/s/ Jennifer L. Thurston**__
                                                    UNITED STATES MAGISTRATE JUDGE